UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Leonard D. Fuqua, | ) | |
| | ) | No. 12 C 6977 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| United States Postal Service, | ) | |
| Patrick R. Donahoe, Postmaster General, | ) | |
| and National Postal Mail Handlers Union, | ) | |
| AFL-CIO/Local 306, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leonard Fuqua brings this pro se lawsuit against Defendants the United States Postal Service ("Postal Service"), Postmaster General Patrick Donahoe, and National Postal Mail Handlers Union, AFL-CIO/Local 306 ("Local 306" or the "Union"). The amended complaint (Fuqua's fifth) advances five claims for relief under federal and Illinois law: (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* against the Postal Service ("Count I"); (2) breach of the duty of fair representation under the Postal Reorganization Act, 39 U.S.C. § 1208(b), against Local 306 ("Count II"); (3) breach of contract against Local 306 and the Postal Service for their breach of the collective bargaining agreement governing Fuqua's employment with the

1

Postal Service ("Count III");[1] (4) a state law claim for intentional infliction of emotional distress against Local 306 ("Count IV"); and (5) a state law claim for negligent infliction of emotional distress against Local 306 ("Count V"). R. 85. Defendants move to dismiss Fuqua's complaint under Federal Rule of Civil Procedure 12(b)(6). R. 79, 81. For the reasons explained below, the defendants' motions to dismiss are granted in part and denied in part. The Court grants the Postal Service's motion to dismiss Count III with prejudice as time-barred, but denies the Postal Service's motion to dismiss Count I. Fuqua may therefore proceed with his ADEA claim. Local 306's motion to dismiss is granted in its entirety, and Counts II, III, IV, and V against Local 306 are dismissed with prejudice.

**Background**

The following relevant and well-pleaded facts, drawn from Fuqua's fifth amended complaint, are accepted as true, and are set forth in the light most favorable to Fuqua. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In evaluating the defendants' motions to dismiss, the court considers both "documents attached to the complaint" and "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Fuqua worked for the Postal Service as a mail handler at the Postal Service O'Hare Mail Center in Chicago, Illinois. R. 85 ¶ 13. While employed there, Fuqua

---

[1] Together, Counts II and III against Local 306 and the Postal Service comprise what is commonly referred to as a "hybrid" breach of contract/duty of fair representation claim under the Postal Reorganization Act. Fuqua purports to bring this "hybrid" claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, R. 85 ¶ 1, but because he is suing the Postal Service, his claim is properly brought under the Postal Reorganization Act, 39 U.S.C. § 1208(b).

was a member of Local 306, which served as his bargaining representative and was a signatory to the collective bargaining agreement ("CBA") between the National Postal Mail Handlers Union and the Postal Service. *Id.* at ¶¶ 14, 15, 45, 48, 59. In April 2010, the Postal Service claimed it was closing the O'Hare Mail Center. *Id.* at ¶ 17. Fuqua alleges that in June 2010, the Postal Service informed him that he was required to bid for a job in one of the following locations or be subject to involuntary reassignment: Kansas City, Missouri; Warrendale, Pennsylvania; Oklahoma City, Oklahoma; Des Moines, Iowa; Terre Haute, Indiana; South Bend, Indiana; Indianapolis, Indiana; and Gary, Indiana (a location that was within a 30-mile radius of Fuqua's home). *Id.* at ¶¶ 27, 28; *see also id.*, Exh. E. Around that time, the Postal Service revised the list, removing the jobs in Indiana, which were closest to Fuqua's home. R. 35 ¶ 29. The Postal Service then posted jobs available for mail handlers in July 2010 in the Des Moines and Gary locations but noted that those jobs were only available to those mail handlers who were not awarded a job under the previous posting. *Id.* at ¶¶ 30, 31; *see also id.*, Exh. G. Fuqua submitted bids for the Gary location in August in an attempt to be assigned to a station closer to his place of residence. R. 35 ¶ 32, *see also id.*, Exh. H. The Postal Service disallowed these bids and assigned him to the station in Kansas City. R. 35 ¶¶ 33, 35. Protesting that assignment, Fuqua failed to report to work in Kansas City. *Id.* at ¶ 35.

Fuqua alleges that "on numerous occasions" during this time period—between May and August 2010—he asked a Local 306 official to file grievances on

his behalf based on the Postal Service's violations of the CBA, but that official failed to do so. *Id.* at ¶¶ 38, 49-53. According to Fuqua, due to Local 306's inaction, he ceased receiving pay from the Postal Service in August. *Id.* at ¶¶ 36, 54, 70. The following year, in March 2011, Fuqua was "officially separated" from employment with the Postal Service. *Id.* at ¶¶ 54, 71.

Fuqua filed this lawsuit on August 30, 2012. R. 1. Following several rounds of briefing, Fuqua filed his fifth amended complaint bringing two claims against the Postal Service and four claims against Local 306. Defendants have moved to dismiss all the counts against them.[2] The Postal Service moves to dismiss the two counts against them, arguing that (1) Fuqua's age discrimination claim should be dismissed without prejudice because it fails to comply with Rule 8's minimum pleading requirements; and (2) Fuqua's claim alleging that the Postal Service breached the collective bargaining agreement should be dismissed with prejudice because it is time-barred. R. 81, 104. Local 306 moves to dismiss the four counts against it with prejudice, claiming that (1) Fuqua's breach of duty of fair representation claim is time-barred; and (2) Fuqua's remaining state law claims are preempted by his federal duty of fair representation claim. R. 79.

---

[2] In ruling on Local 306's motion to dismiss, the Court has considered its motion to dismiss, Fuqua's response (which was in response to an earlier motion to dismiss by Local 306, R. 75), Local 306's reply, Fuqua's amended response to that reply, and Local 306's surreply. R. 78, 79, 90, 100, 102. In deciding the Postal Service's motion to dismiss, the Court has considered its motion to dismiss, Fuqua's response, the Postal Service's reply, Fuqua's amended response to that reply, and the Postal Service's surreply. Fuqua's R. 81, 87, 95, 101, 104.

4

## Analysis

### I.  Count I—ADEA Claim against The Postal Service

In Count I, Fuqua alleges that the Postal Service changed his duty station and discharged him based on age discrimination in violation of the ADEA.[3] R. 85 ¶¶ 39-43. The Postal Service moves to dismiss this Count, arguing that Fuqua's age discrimination allegations do not satisfy Rule 8's minimum pleading requirement. Specifically, the Postal Service claims that Fuqua fails to allege whether he falls within the ADEA's age-protected class and asks that Fuqua be required to replead this fact.

To be a member of the ADEA's protected class of individuals, Fuqua must have been at least 40 years of age at the time of the events giving rise to his claim. 29 U.S.C. §§ 623(a)(1), 631(a). This is a threshold Fuqua must cross to demonstrate entitlement to relief under the ADEA. Contained within Fuqua's complaint is the allegation that he is 52 years old. R. 85 ¶ 57. This allegation demonstrates that at the time of the events giving rise to his claim—between May 2010 and May 2011—Fuqua fell within the ADEA's protected age class. The Postal Service points to no other deficiencies regarding Count I. Accordingly, the Court denies the Postal

---

[3] In his fourth amended complaint, Fuqua alleged age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, R. 71-1, but recognized that such a claim could not be brought under Title VII, 42 U.S.C. § 2000e-16 (prohibiting discrimination in federal employment based on race, color, religion, sex, or national origin). Fuqua thereafter amended his complaint to allege age discrimination in violation of the ADEA. R. 85.

Service's motion to dismiss on the asserted ground in the motion, and Fuqua will be allowed to proceed with his ADEA claim.

## II. Counts II and III—Hybrid Breach of Contract/Breach of Duty of Fair Representation Claims against the Postal Service and Local 306[4]

39 U.S.C. § 1208(b) of the Postal Reorganization Act authorizes suits against the Postal Service and labor organizations representing Postal Service employees in certain circumstances: "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

With Count III, Fuqua sues the Postal Service for breaching provisions of the CBA between the National Postal Mail Handlers Union and the Postal Service, a claim he brings under § 1208(b). With Count II, Fuqua sues Local 306 for failing to file grievances on his behalf and challenge the Postal Service's breach of the CBA, a claim he brings as a violation of the Union's implied federal duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (noting unions have implied statutory duty to fairly represent all of its members in their enforcement of CBAs). These claims, which comprise essentially two causes of action—one against

---

[4] Count II of Fuqua's fifth amended complaint alleges a breach of Local 306's duty of fair representation while Count III alleges a breach of contract claim against the Postal Service for breach of the collective bargaining agreement. R. 85. Because these two claims—one against the Postal Service and the other against the Union—are "inextricably interdependent," *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (internal quotation marks omitted), the Court considers these two causes of action together.

6

the Postal Service, the employer, for breaching provisions of the applicable CBA and one against the Union for breaching its duty of fair representation—are together referred to as a "hybrid" suit. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 218 (1983); *cf. McLeod v. Arrow Marine Transport, Inc.*, 258 F.3d 608, 613 (7th Cir. 2001) (referring to claim brought under comparable § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as "hybrid suit").[5]

More specifically, Fuqua alleges in Count III that between April 2010 and March 2011, the Postal Service violated various provisions of the CBA by (1) forcing him to work more than 100 miles from his residence in Illinois but allowing part-time flexible employees without seniority to work within a 100-mile radius of the Chicago Mail Center, R. 85 ¶¶ 65-67; (2) refusing his request to become a part-time flexible employee, *id.* at ¶¶ 26, 72; and (3) disallowing his bids for two posted positions at the Postal Service facility in Gary, Indiana, *id.* at ¶¶ 32, 69. In Count II, Fuqua claims that he asked a Local 306 representative to file grievances on his behalf for these violations of the CBA, but the Union failed to do so. *Id.* at ¶¶ 49-54. Both the Postal Service and Local 306 suggest the statute of limitations for bringing a 39 U.S.C. § 1208(b) "hybrid" action, brought by Fuqua here to remedy the

---

[5] 39 U.S.C. § 1208(b) is analogous to its private sector counterpart, § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), which also allows for suits for violations of contracts between an employer and a labor organization. In light of the similarities between the two statutes, *see Bowen v. United States Postal Serv.*, 459 U.S. 212 (1983), courts construing hybrid claims brought under 39 U.S.C. § 1208(b) have applied precedent construing claims brought under 29 U.S.C. § 185(a). *See Roman v. United States Postal Serv.*, 821 F.2d 382, 388-90 (7th Cir. 1987); *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988).

7

aforementioned violations, should be six months and have moved to dismiss Fuqua's action as time-barred.

Borrowing the limitations period applicable under § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), which establishes a six-month period for making charges of unfair practices to the National Labor Relations Board, the Supreme Court concluded in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-71 (1983), that the statute of limitations for a hybrid § 301 (breach of collective bargaining agreement)/duty of fair representation claim under the Labor Management Relations Act, 29 U.S.C. § 185, is six months. The Court reasoned that in situations where there is no express applicable federal statute of limitations provision, the "task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello*, 462 U.S. at 158. Undertaking that task, the Court concluded that § 10(b) of the NLRA was a "closer analogy" to § 29 U.S.C. § 185 than any available state statute and that § 10(b) was "actually designed to accommodate a balance of interests very similar to that at stake" under 29 U.S.C. § 185. *DelColstello*, 462 U.S. at 169. Accordingly, the Court found that the application of § 10(b)'s six-month statute of limitations to claims brought under 29 U.S.C. § 185 was appropriate. *DelColstello*, 462 U.S. at 169.

The Seventh Circuit has not expressly held that a hybrid breach of contract/duty of fair representation claim brought pursuant to 39 U.S.C. § 1208 is subject to 29 U.S.C. § 185's six-month statute of limitations period, but other circuits have. *See Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988); *Abernathy v.*

*U.S. Postal Serv.*, 740 F.2d 612, 613 (8th Cir. 1984). And so have other courts in this district. *See Buffkin v. United States Postal Serv.*, No. 09 C 4735, 2010 WL 3156033, at *2-3 (N.D. Ill. Aug. 9, 2010) (collecting other out-of-circuit district court cases); *Stewart v. United States Postal Serv.*, No. 90 C 7304, 1991 WL 164329, at *4 (N.D. Ill. Aug. 16, 1991).

Two reasons support the conclusion that 29 U.S.C. § 185's six-month statutory period should apply to actions brought under 39 U.S.C. § 1208(b). First, the similarities between the language of 29 U.S.C. § 185(a) and 39 U.S.C. § 1208(b) establish that Congress intended to afford similar relief to employees of the Postal Service to that enjoyed by employees who work under CBAs with private employers. *See Buffkin*, 2010 WL 3156033, at *3. Second, *DelCostello*'s reasoning regarding "the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation," which is applied to hybrid actions brought under § 29 U.S.C. § 185, applies with equal force to hybrid actions brought pursuant to § 39 U.S.C. § 1208. The Court therefore finds, as other courts have similarly found, that it is appropriate to borrow the six-month limitations period of 29 U.S.C. § 185(a) and apply it to hybrid actions brought under 39 U.S.C. § 1208(b).

Applying that six-month limitations period and viewing Fuqua's allegations in the light most favorable to him, the Court concludes that Fuqua's hybrid action is time-barred. A hybrid cause of action such as this "accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no

9

further action would be taken on his grievance." *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999) (internal quotation marks omitted) (citing cases). Also, when a CBA requires that a complainant bring a grievance within a certain time period, a "failure and refusal of the Union to file the grievance within the specified time amount[s] to a final decision." *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 303 (7th Cir. 1983).

Here, Fuqua filed his complaint in this Court on August 30, 2012. To be timely, Fuqua's hybrid claim must therefore have accrued on or after March 1, 2012. Neither Fuqua's breach of contract claim against the Postal Service nor his breach of duty of fair representation claim against the Union meets this deadline. Fuqua alleges in his complaint that the Postal Service violated various provisions of the CBA between April 2010 and March 2011 and that on several occasions between May and August 2010, he asked Local 306 to pursue grievances when the Postal Service engaged in these violations and it ultimately failed to do so.[6] R. 85, ¶¶ 38, 49-54, 65-72. Article 15, section 2 of the CBA provides that a union grievance must be filed under Step 1 of the CBA grievance procedure within 14 days of when the

---

[6] In its motion to dismiss, the Postal Service notes that Fuqua does not expressly allege that he asked Local 306 to file a grievance regarding his separation from the Postal Service in March 2011. The Postal Service, however, assumes that Fuqua exhausted this claim under the CBA and includes the March 2011 separation as part of his hybrid claim. The Court will make the same assumption.

10

union first becomes aware of, or reasonably should have become aware of, the facts giving rise to the grievance. R. 82-1, Exh. A at 2-3.[7]

The last possible date that Fuqua's six-month limitations period began to run on his claim against the Postal Service was 14 days after sometime in March 2011. Even assuming March 31, 2011 was the date that the limitations began to run, Fuqua's August 30, 2012 complaint, filed more than a year after his hybrid claim against the Postal Service accrued, is untimely. As for his hybrid action against Local 306, Fuqua's claim against the Union stems from inactivity after May through August 2010, during which time Fuqua requested that Local 306 file grievances on his behalf. At some point following August 2010 and prior to the beginning of the six-month statutory period on March 1, 2012, Fuqua should have realized that the Union was taking no action on his behalf; he failed, however, at any point during this time period to initiate a breach of duty of fair representation claim against the Union.[8] Because the Union's failure to act on Fuqua's grievances should have been discovered by a reasonably diligent claimant prior to the March 1, 2012 statutory period, Fuqua's hybrid claim against Local 306, filed beyond the six-month limitations period, is untimely. *See Metz*, 715 F.2d at 304.

---

[7] Because the CBA is a document critical to Fuqua's complaint and referred to in it, the Court may consider the contents of the CBA in ruling on the Postal Service's motion to dismiss. *See Geinosky*, 675 F.3d at 745 n. 1.

[8] Even if the Court gave Fuqua the benefit of a March 2011 date—the date when Fuqua's employment with the Postal Service ended and presumably when Local 306 failed to pursue a grievance regarding his termination—Fuqua's hybrid claim would still be untimely because Fuqua did not file his complaint until more than a year after his discharge.

Fuqua notes in his complaint that he filed a charge of discrimination against the Postal Service with the Postal Service Equal Employment Opportunity Office and that the Office issued a notice of final action on May 31, 2012. R. 85 ¶ 2. This charge however did not toll the time for Fuqua to file his hybrid claim against the Postal Service and the Union and has no impact here. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987) ("[T]he time for filing a section 301/fair representation claim is not tolled by pursuing a Title VII claim with the EEOC.").

Relying on *Local Union 2-2000 United Steel, et al. v. Coca-Cola Refreshments USA, Inc.*, 2012 WL 5879273 (W.D. Mich. Nov. 21, 2012), and the three-year statute of limitations provided for in 29 U.S.C. § 255, Fuqua argues that the "blatant willful disregard" of the Postal Service and Local 306 excuses his failure to timely file his hybrid claim under § 1208(b). Such a disregard, according to Fuqua, allows for an extension of the statute of limitations. But *Local Union 2-2000* dealt with the applicability of a Michigan state statute of limitations to a straightforward breach of contract dispute between a labor union and a private employer. 2012 WL 5879273, at *7. This case involves a suit against the Postal Service, not a private employer, and a hybrid § 301/duty of fair representation claim against the employer, not a straightforward breach of contract claim, which was the sole claim at issue in *Local Union*. *Id.* Nothing in that case—or the plain language of § 1208(b)—moreover suggests that there is an exception to the six-month statute of limitations where a "blatant willful disregard" is alleged.

Nor does Fuqua's citation to 29 U.S.C. § 255 help him. Under 29 U.S.C. § 255(a), there is a two-year statute of limitations to the causes of action mentioned in the section and a three-year limitations period for "willful" violations. But that statute is part of the Portal-To-Portal Pay Act, 29 U.S.C. § 251, *et seq.*, and only applies to causes of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act, the Walsh-Healey Act, or the Bacon-Davis Act. In short, this unrelated statute has no application to Fuqua's current hybrid § 301/duty of fair representation claim brought under 39 U.S.C. § 1208(b).

In sum, because Fuqua filed his hybrid suit more than six months after the accrual of any of his claims, it exceeds the applicable statute of limitation. Accordingly, Count II against Local 306 for its breach of the duty of fair representation and Count III against the Postal Service for its breach of the CBA are therefore time-barred.

**III.   Counts III, IV, and V—Remaining State Law Claims against Local 306**

Fuqua further brings a state law breach of contract claim against Local 306—based on the Union's breach of the collective bargaining agreement and brought as a violation of Illinois law, R. 85 ¶ 1—and state law tort claims of intentional and negligent infliction of emotional distress—premised on Local 306's treatment of him and presumably based on the Union's refusal to file grievances against the Postal Service. Local 306 moves to dismiss these remaining claims, arguing that because

they arise from the Union's representation of an employee in a dispute with an employer, they are preempted by Fuqua's federal duty of fair representation claim.

The Supreme Court has interpreted § 301 of the analogous 29 U.S.C. § 185(a) as a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (internal quotation marks omitted). In light of that mandate, the Court has found that claims brought under § 301 preempt state law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers*, 471 U.S. at 220. More specifically, § 301 will operate to preempt a state-law claim whose resolution depends upon the meaning of a collective bargaining agreement. *See Lingle v. Norgle Div. of Magic Chief, Inc.*, 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."). Put simply, state law claims alleging that unions have violated collective bargaining agreements are treated as claims arising under § 301 and resolution under § 301 preempts those state law claims. *Id.*

In a similar vein, state law claims brought by members of unions arising out of the union's representation of them in disputes with employers are displaced by the federal law duty of fair representation. *See Vaca*, 386 U.S. at 177; *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008); *Marrero v. Modern Maint. Bldg. Serv.*

*Inc.*, 318 F. Supp. 2d 721, 724 (E.D. Wis. 2004). "To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship." *Adkins*, 526 F.3d at 539. "Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative, such as an express provision of the collective bargaining agreement or a collateral contract." *Id.* at 539-40.

Fuqua's intentional and negligent infliction of emotional distress claims (Counts IV and V) allege misconduct that directly falls within the scope of Local 306's federal duty of fair representation. Stated another way, these claims arise out of Local 306's failure to pursue Fuqua's grievances with the Postal Service—allegedly violating its duty to exercise its discretion to act in "complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. And because these claims raise questions regarding the adequacy of Local 306's efforts on Fuqua's behalf, they are preempted by his claim alleging a violation of the Union's federal law duty of fair representation (Fuqua's Count II), which the Court has already found to be time-barred. Fuqua moreover fails to allege any provision of the CBA that imposed an additional duty on Local 306 to pursue members' grievances aside from duties imposed by the federal duty of fair representation. Accordingly, Fuqua's state law claims are preempted and must be dismissed. *See, e.g.*, *Adkins*, 526 F.3d at 540-42; *Marrero*, 318 F. Supp. 2d at 725-26.

Fuqua's breach of contract claim (Count III), while pled as a state law breach of contract claim, is based on the same allegations as his federal breach of duty to represent claim and is essentially a restatement of that claim. Because that state law claim is related to the duties arising out of Local 306's federal duty of fair representation, it is also preempted by federal labor law. *See Adkins*, 526 F.3d at 540; *Bickers v. Int'l Ass'n of Machinists & Aerospace Workers*, 8 Fed. Appx. 514, 516 (6th Cir. 2001). This claim is also dismissed.

**Conclusion**

For the foregoing reasons, the defendants' motions to dismiss, R. 79, 81, are granted in part and denied in part. The Court grants the Postal Service's motion to dismiss Count III with prejudice as time-barred, but denies the Postal Service's motion to dismiss Count I. Fuqua may therefore proceed with his ADEA claim. Local 306's motion to dismiss is granted in its entirety, and Counts II, III, IV, and V against Local 306 are dismissed with prejudice. A status hearing is set for October 9, 2013, at 9:00 a.m.

ENTERED:

_Thomas M Durkin_
Thomas M. Durkin
United States District Judge

Dated: September 25, 2013