UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD D. FUQUA, | ) |
| | ) No. 12 C 6977 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Thomas M. Durkin |
| | ) |
| PATRICK DONAHOE, Postmaster | ) |
| General of the United States, UNITED | ) |
| STATES POSTAL SERVICE, and | ) |
| NATIONAL POSTAL MAIL HANDLERS | ) |
| UNION, AFL-CIO/LOCAL 306, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leonard Fuqua, a former employee of the United States Postal Service, filed this pro se action[1] alleging various claims related to his involuntary transfer from the Postal Service's O'Hare Air Mail Center ("O'Hare AMC") to a mail facility located in Kansas City. In a Memorandum Opinion and Order dated September 25, 2013, R. 107, this Court dismissed all of Fuqua's claims against the Postal Service with the exception of his claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. The Postal Service has moved for summary judgment. R. 156. The Court now enters summary judgment in favor of the Postal Service on Fuqua's ADEA claim.

---

[1] Fuqua has never requested appointment of counsel.

# FACTS

Fuqua was employed by the Postal Service as a full-time mail handler at the O'Hare AMC from March 1993 until March 2011. R. 158-1 at 13-14. In 2010, when Fuqua was 49 years old, *id.* at 9, 23, the Postal Service called a meeting of its employees at the O'Hare AMC to tell them it was closing that facility. *Id.* at 23-24. As a result, all current employees were "excessed out," which is a term used by the Postal Service to refer to an involuntary transfer. *Id.* at 22-23. Fuqua and the other Postal employees at the O'Hare AMC were notified that they could select another postal employment location by bidding on available jobs. They were given a deadline of June 14, 2010 for submitting job bids, and were told that a failure to submit a bid by the deadline would result in the Postal Service assigning them to a location. *Id.* at 26.

Fuqua attached to his complaint[2] several documents that appear to be listings of available jobs on which Fuqua and the other Postal employees at the O'Hare AMC could bid. The first job listing, which has the notation "revised 5/14/10" at the bottom left-hand corner of each page, lists two mail handler jobs in Gary, Indiana. R. 85 at 20-22 (Exhibit D to Fifth Am. Complaint); R. 85 at 5 (Fifth Am. Complaint, ¶ 27). The remaining mail handler jobs in the "revised 5/14/10" job listing were for facilities in (1) Kansas City, Missouri, (2) Warrendale, Pennsylvania, (3) Oklahoma City, Oklahoma, (4) Tulsa, Oklahoma, (5) Des Moines,

---

[2] The operative complaint is Fuqua's Fifth Amended Complaint, R. 85.

2

Iowa, (6) Indianapolis, Indiana, (7) South Bend, Indiana, and (8) Terre Haute, Indiana. *Id.* at 20-22.

Fuque wanted to bid on the two Gary, Indiana mail handler jobs because they were close to his home. It appears, however, that Fuqua may have missed his window of opportunity to bid on the Gary, Indiana jobs, because Fuqua was reminded by a letter from the Postal Service dated June 7, 2010, that the bid deadline was June 14, 2010, and was also given an updated listing of available jobs (with the notation "revised 6/3/10" at the bottom left-hand corner of each page), which no longer listed the Indiana locations that had appeared on the "revised 5/14/10" listing Fuqua previously had received. R. 85 at 23-25 (Exhibits E and F to Fifth Am. Complaint); R. 85 at 5 (Fifth Am. Complaint, ¶¶ 28-29).

Fuqua testified that, due to personal circumstances, he was unable to submit a bid for any of the listed jobs other than the one previously listed for Gary, Indiana. Since that location was removed from the available job listing prior to the June 14, 2010 bid deadline, he did not submit a bid at that time. R. 158-1 at 26-29; R. 85 at 5 (Fifth Am. Complaint, ¶¶ 21-29). Because Fuqua failed to submit a job bid by the June 14, 2010 deadline, the Postal Service assigned him to one of the other available mail handler jobs—a mail handler position in Kansas City. R. 158-1 at 26-28. The Postal Service directed Fuqua to report to work at the Kansas City facility by August 14, 2010. R. 158-1 at 28.

It appears that, on July 27, 2010 — after Fuqua was reassigned to Kansas City — the Postal Service posted a new revised list of available jobs. *See* R. 85 at 26

3

(Exhibit G to Fifth Am. Complaint). The July 27, 2010 list included five full-time mail handler positions in Des Moines, Iowa and five full-time mail handler positions in Gary, Indiana. *Id.*; R. 85 at 6 (Fifth Am. Complaint, ¶ 30). Fuqua states that, on August 3, 2010, in response to the July 27, 2010 listing, he submitted a bid for the Gary, Indiana mail handler positions. *Id.* (Fifth Am. Complaint, ¶ 32; R. 85 at 27 (Exhibit H to Fifth Am. Complaint). The July 27, 2010 job listing, however, contained the following caption: "Note: This Posting Is For Those Mail Handlers Who Did Not Receive An Award On The Previous Positions Only." *See* R. 85 at 26 (Exhibit G to Fifth Am. Complaint). Fuqua states that the Postal Service denied his bid for one of the Gary positions in August 2010 (after he was reassigned to the Kansas City position) based on this "Note." R. 85 at 6 (Fifth Am. Complaint, ¶¶ 31-33).[3]

Fuqua did not report to his new job assignment in Kansas City in August 2010, as directed by the Postal Service. R. 158-1 at 28-29. Fuqua testified that he wrote letters to management at both the old and new facility explaining why he could not show up as required. *Id.* On December 17, 2010, four months after Fuqua was to have reported to work in Kansas City, the Postal Service sent Fuqua a letter notifying him that he would be removed from his employment with the Postal Service on January 19, 2010 due to his failure to report to his new duty station. R. 158-1 at 33-34, 75-77. Although Fuqua testified that he does not remember filing

---

[3] These facts are at least partially contested by the Postal Service. *See* R. 128 at 11 (Answer, ¶¶ 31-33).

4

a grievance with the union concerning this termination notice (*id.* at 34; *but see id.* at 35), the record contains a memo from the union setting forth a settlement with the Postal Service on Fuqua's behalf regarding that issue. R. 158-1 at 74. The settlement provided that, if Fuqua reported for duty at the Kansas City facility by March 26, 2011, then the previous notice of removal that had been issued to him would be expunged. R. 158-1 at 74. Fuqua did not report to Kansas City by March 26, 2011, *id.* at 35, and he was terminated effective that date. R. 158-1 at 78.

Fuqua filed a discrimination claim with the EEOC regarding his involuntary transfer prior to the Postal Service's termination of his employment. A final agency action by the EEOC was issued on May 31, 2012, and Fuqua filed the present lawsuit on August 30, 2012.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). A plaintiff may prove discrimination under this provision either through direct evidence or through indirect evidence, using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting approach. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). Because Fuqua has not cited to any direct evidence of age discrimination, the Court must apply the *McDonnell Douglas* burden-shifting method of proof. Under this method, Fuqua first must present a prima facie case of age discrimination. *See Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). To set forth a prima facie case of age discrimination, Fuqua must show that: (1) he was over forty years of age; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations at the time of the adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *See Wade v. Lerner N.Y., Inc.,* 243 F.3d 319, 322 (7th Cir. 2001). If Fuqua succeeds in establishing a prima facie case, a presumption of discrimination arises and the burden shifts to the Postal Service to offer a legitimate, non-discriminatory reason for the adverse action. *See Pitasi*, 184 F.3d at 716. If the Postal Service

fulfills this requirement, the burden shifts back to Fuqua to demonstrate that the Postal Service's proffered reason is pretextual. *See id.*

Fuqua raises two claims under the ADEA: one based on his termination and another based on his involuntary transfer to the Kansas City facility. The Court will address each of these claims separately.[4]

A. **Discriminatory Termination**

Fuqua was forty-nine years old at the time of his termination and thus he has satisfied the first element of a prima facie ADEA case. In addition, Fuqua's termination from his mail handler position satisfies the second requirement of an adverse employment decision. Fuqua cannot, however, satisfy the third element of his termination claim, which requires evidence showing that he was performing his job according to his employer's reasonable expectations. Fuqua admits that he did not show up for his new job in Kansa City. R. 158-1 at 28-29. The Postal Service

---

[4] The Postal Service suggests that Fuqua failed to exhaust his administrative remedies on his discriminatory termination claim. *See* R. 158 at 3 (Def. L.R. 56.1 Stmt., ¶ 20) ("Fuqua's administrative complaint of discrimination did not contest his notice of removal or termination from the Postal Service."). Fuqua denied this statement. R. 164 at 7 (Pl. L.R. 56.1 Resp., ¶ 20). The documents cited by the Postal Service in support of the statement suggest that the Postal Service is correct. The EEOC decision denying Fuqua's administrative complaint does not discuss the termination issue and also states that Fuqua first sought EEO counseling on May 14, 2010, which was prior to his termination. R. 158-2 at 2-7. Fuqua, however, might have added the issue of discriminatory termination to the administrative proceedings at some point after he was terminated, notwithstanding that the EEOC's written decision does not address the issue. The Postal Service also cites Fuqua's deposition testimony in which Fuqua appeared to concede that he did not raise the termination in the EEOC proceeding. R. 158-1 at 36-37. But it is not clear from this testimony whether Fuqua understood the question. Therefore, the Court will assume for purposes of this order that Fuqua properly exhausted his administrative remedies on the termination issue.

fired Fuqua because he refused to report to his new job location. Fuqua clearly was not performing his job according to his employer's reasonable expectations at the time he was terminated, and therefore he cannot establish a prima facie claim of age employment discrimination based on his termination. *See Ismail v. Potter*, 2006 WL 2989293, at *6 (N.D. Ill. Oct. 18, 2006) (plaintiff could not show "he met the Postal Service's legitimate expectations when he was absent without leave and without explanation for five days"). Accordingly, the Postal Service is entitled to summary judgment on Fuqua's claim that he was terminated in violation of the ADEA.

### B. Discriminatory Transfer Claim

Like his discriminatory termination claim, Fuqua has satisfied the first element for his discriminatory transfer claim because he was forty-nine years old when the Postal Service transferred him to Kansas City. The Postal Service does not contest, and the Court therefore will assume, that Fuqua also satisfied the third element for his discriminatory transfer claim in that he was performing well enough in his eighteen years as a mail handler prior to his involuntary transfer to Kansas City to meet the Postal Service's legitimate expectations. *See* R. 164 at 39-47.

#### 1. Adverse Employment Action

The Postal Service contends that Fuqua's transfer to the Kansas City facility does not satisfy the second element for a discriminatory transfer claim because it was not an adverse employment action. The Postal Service cites *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270 (7th Cir. 1996), for that proposition. R. 165 at 7.

8

*Williams* held that "a lateral transfer, which does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." 85 F.3d at 274. But that case addressed a lateral transfer primarily in terms of job responsibilities, not geographic location. The court did not consider a situation like the one here in which a lateral transfer imposes an undue hardship on an employee by requiring him to move more than 500 miles from the place where he has lived his entire life. That the *Williams* court was not contemplating the latter situation in its broadly worded statement regarding "lateral transfers" is shown by its citation to *Flaherty v. Gas Research Inst.*, 31 F.3d 451 (7th Cir. 1994), which stated that "employment actions that fall short of outright termination may also be actionable under the ADEA," including a job transfer that would cause more than just "personal inconvenience or altered job responsibilities." *Id.* at 456-57 (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)); *see also Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989) (the ADEA does not prohibit "changes in duties or working conditions that cause no *materially significant* disadvantage to an older employee") (emphasis added). In *Crady*, the branch manager of a bank became a collections officer at another branch while retaining the same salary and benefits. *Crady*, 993 F.2d at 135-36. In *Spring*, the principal of an elementary school was transferred to a dual principalship over two elementary schools under a new contract with higher pay. *Spring,* 865 F.2d at 885-86. These cases do not involve comparable facts to those at issue here. Moreover, other cases suggest that a transfer to another job of the same pay and status may in

9

some circumstances constitute an adverse employment action. *See, e.g., Ray v. Henderson*, 217 F.3d 1234, 1241 & n.4 (9th Cir. 2000).

Unlike many of the cases holding that a lateral transfer is not an adverse employment action, Fuqua's transfer to Kansas City involved more than merely inconvenience or a de minimus alteration of the conditions of his employment. *See, e.g., Nash v. Palm Beach Cnty. Sch. Dist.*, 2010 WL 3220191, at *9 (S.D. Fla. Aug. 13, 2010) ("It is not enough that a transfer imposes some de minimus inconvenience or alteration of responsibilities."), *aff'd*, 469 Fed. App'x 712 (11th Cir. 2012) ("the employment action must be materially adverse as viewed by a reasonable person in the circumstances"). Thus, the Court cannot say that the transfer in this case does not satisfy the adverse employment action requirement for a claim under ADEA. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (recognizing that the Seventh Circuit has adopted a broad definition of adverse employment action but requiring evidence of some negative change in employment terms or status); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (holding that an adverse action is one that negatively alters material terms and conditions of employment).

### 2. Comparable Employees

Assuming without deciding that Fuqua's transfer to the Kansas City facility could constitute an adverse employment action, Fuqua's ADEA claim nevertheless fails because Fuqua has not presented any evidence that the Postal Service treated similarly situated younger employees more favorably than him. The evidence is

undisputed that the Postal Service gave all excessed employees, regardless of age, the same choice – to bid for a new job location or else be transferred to a location chosen by the Postal Service. R. 158 at 2 (Def. L.R. 56.1 Stat., ¶¶ 6, 8-10); R. 164 at 5 (Pl. L.R. 56.1 Resp., ¶¶ 6, 8-10). In response, Fuqua points to evidence he says shows that thirteen part-time flexible mail handlers who were employed at O'Hare AMC, although technically excessed from the O'Hare AMC like all other employees at that facility, were reassigned jobs within the Chicago metropolitan area. R. 85 at 5 (Fifth Am. Complaint, ¶ 23); R. 85 at 14 (Exhibit B to Fifth Am. Complaint). Moreover, Fuqua states, those thirteen part-time employees in reality were never excessed from the O'Hare AMC because they were reassigned to the International Service Center ("ISC"), which took over the space previously occupied by the O'Hare AMC. R. 85 at 5 (Fifth Am. Complaint, ¶ 18); R. 85 at 12 (Exhibit A to Fifth Am. Complaint).

The problem with Fuqua's evidence on this issue is that the documents attached to Fuqua's complaint do not contain sufficient information to establish all of the facts that Fuqua would need to make this argument. For instance, the document attached as Exhibit B to Fuqua's complaint appears to list part-time flexible mail handlers who were reassigned to various locations near Chicago, including Park Ridge, Forest Park, Romeoville, and Steger, Illinois. But that document does not show the ages of the part-time flexible mail handlers in question. In addition, the document attached as Exhibit A to Fuqua's complaint states that the Chicago ISC would "be moving operations into the space that is currently being

occupied by" the O'Hare AMC, but that document does not identify either the names of the former employees of the O'Hare AMC who were reassigned to the Chicago ISC or the ages of those reassigned employees.

Therefore, even if the Court were to assume that the part-time flexible employees in question were "similarly situated" employees *and* that they were treated more favorably than Fuqua, there is still an absence in the record of proof that those similarly situation employees who were treated more favorably than Fuqua were employees who were "substantially younger" than Fuqua. Without proof on this factual issue, a reasonable factfinder cannot infer age discrimination from the Postal Service's differential treatment of Fuqua.

In any event, Fuqua was given a chance like *every other* full-time employee to bid on local jobs like those in Gary, but he simply did not act quickly enough. Others apparently did. But that is not a basis for a lawsuit, let alone a lawsuit alleging age discrimination.

### 3. Legitimate Nondiscriminatory Reason

Moreover, even if Fuqua could overcome these evidentiary issues, he has not shown he could overcome the Postal Service's legitimate, nondiscriminatory reason for replacing full-time mail handlers with part-time mail handlers. Fuqua acknowledges that the actions taken by the Postal Service regarding the O'Hare AMC were part of "an initiative to downsize its workforce." R. 85 at 4 (Fifth Am. Complaint, ¶ 16). "It is well settled that an employer is free to adjust its workforce for budgetary reasons, and '[a] reduction in force is a legitimate nondiscriminatory

12

reason for termination.'" *Bailey v. Village of Pittsford*, 981 F. Supp. 2d 178, 182 (W.D.N.Y. 2013) (quoting *Tutko v. James River Paper Co.*, 1999 WL 1024627 at *1 (2d Cir. 1999)). "The [ADEA] does not forbid essential corporate belt-tightening having no discriminatory motivation," *Tutko*, 1999 WL 1024627 at *1, and courts and juries do not operate as "super-personnel department[s]" to question an employer's staffing decisions. *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997); *see also Cole v. Ill. Tool Works, Inc.*, 924 F. Supp. 2d 978, 988 (N.D. Ill. 2013) ("Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely, the economic downturn requiring a reduction in force.").

As such, the burden falls to Fuqua to show that the elimination of his full-time mail handler position and replacement of that position with part-time mail-handler positions were done for discriminatory purposes based on Fuqua's age, rather than legitimate budgetary concerns. *See Knowles v. United Healthcare Servs., Inc.*, 2006 WL 1430212, at *9 (N.D. Ill. May 19, 2006) ("An employment decision based on compensation level . . . does not violate the ADEA.") (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir. 1994)). The rationale for requiring Fuqua to make this showing is explained by the Supreme Court in *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). *Hazen Paper Co.* holds that ADEA commands only that employers "evaluate [older] employees . . . on their merits and not their age." *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422 (1985). An employer cannot rely on age as a proxy for an employee's remaining

characteristics, such as productivity, but must instead focus on those factors directly.

> When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Hazen Paper Co.,* 507 U.S. at 611 (citations omitted). In other words, for wage discrimination to constitute age discrimination, wage must "depend[ ] directly on age, so that the use of one is a pretext for the other." *Anderson*, 13 F.3d at 1125-26 (quoting *Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1212 (7th Cir. 1987) (Easterbrook, J., dissenting)).

Fuqua maintains that the Postal Service discriminated against him not by transferring him, but by transferring him to a distant geographical location. He submits that he was treated differently than younger employees who were able to transfer to a location close to (if not identical with) their previous location at O'Hare

AMC. "[T]he ADEA does not mandate that employers establish an interdepartmental transfer program during the course of a [reduction in force]; an employer incurs no duty to transfer an employee to another position when it reduces its work force for economic reasons." *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995) (citing case law). Thus, an employer can incur liability under ADEA only by choosing to implement a transfer program and then doing so in such a way that favors younger employees over older ones. *Id.* ("However, an employer implementing a [reduction in force] may not favor younger employees over older ones by finding new positions only for younger workers."). Fuqua's argument appears to be that this is what happened here, because the Postal Service found new positions in close proximity to the old facility only for younger workers.

But again, Fuqua has not submitted sufficient evidence to show either that part-time employees were younger than him, or that they were given preferential treatment by being allowed to transfer to a location in close geographic proximity to their previous location. Without such evidence, there is no basis for presuming a link between the preferential treatment given to part-time employees and Fuqua's age. Fuqua contends the Postal Service offered full-time mail handlers the option of receiving the same treatment afforded part-time handlers but only if they accepted the same part-time conditions of employment as those younger part-time mail handlers. Assuming this is true, the requirement that full-time mail handlers accept the same conditions of employment as part-time mail handlers as a condition to receiving the same treatment as them does not establish preferential treatment;

15

it establishes the same treatment between the two classes, and thus *supports* the Postal Service's position that it did not discriminate against Fuqua based on age. Fuqua argues that a requirement that full-time mail handlers give up the benefits accorded to them as full-time employees in order to accept a position as a part-time mail handler violated the collective bargaining agreement between the Postal Service and the local union (the "CBA"). But whether violated the CBA is a different question which Fuqua confuses with the ADEA issue.[5] For this reason, Fuqua has failed to establish a disputed issue of *material* fact that would prevent summary judgment in favor of the Postal Service on Fuqua's ADEA claim.[6]

### C. Parallel Proceeding

One final note concerns the position statements recently filed by the parties. On June 10, 2015, this Court became aware for the first time of a parallel proceeding between the same parties before Judge Norgle. *See Leonard Fuqua v. U.S. Postal Serv., et al.,* No. 1:14-cv-2484 (N.D. Ill.). The Court directed the parties

---

[5] Fuqua's arguments addressing various issues related to whether the Postal Service, in implementing the transfer program, violated the CBA are not pertinent to the above analysis of Fuqua's ADEA claim. Those arguments were part of Fuqua's claims under the Postal Reorganization Act, 39 U.S.C. § 1208(b), which the Court previously dismissed as being barred by the six month statute of limitations of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). R.107 at 6-13. Even assuming the Postal Service breached the CBA in the various respects that Fuqua alleges, for the reasons discussed herein there is insufficient evidence to support a link between those violations and Fuqua's age. ADEA does not prohibit incompetence, stupidity or general injustice by employers, but only age discrimination. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997).

[6] Based on the facts in the record, the Court agrees with Fuqua that he appears to be the victim of a rather unfair and somewhat thoughtless bureaucratic process. Unfortunately, these facts do not provide a basis for relief under the ADEA.

16

to file a position statement explaining why Fuqua's claims in the parallel proceeding and the filing of that case were not raised before this Court in the instant case, and the appropriateness of splitting the claims between the two cases. R. 166. The Postal Service's response, R. 168, indicates that Fuqua filed the case pending before Judge Norgle in April 2014, around the time that discovery was being completed in this case. Fuqua's lawsuit before Judge Norgle alleges claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, based on the same set of facts currently before the Court in this case. Fuqua's FTCA claims were not included in this lawsuit because he had not yet exhausted his administrative remedies on those claims when he received his right to sue letter from the EEOC, which started the 90-day statute of limitations running on his ADEA claims.

The Postal Service represents in its position paper that Fuqua is permitted under the law to file a second lawsuit alleging his FTCA claims after he exhausted his administrative remedies, and the second filing will not be barred by the rule against claim-splitting. The Postal Service cites to *Estate of Barrett v. United States*, 462 F.3d 28, 37-38 (1st Cir. 2008), for that proposition. R. 168 at 3. However, the Seventh Circuit does not appear to agree with the dicta in *Estate of Barrett* on which the Postal Service relies. *See, e.g., Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) ("the requirement to exhaust administrative remedies is no excuse for claim-splitting"); *Palka v. City of Chicago*, 662 F.3d 428, 437-38 (7th Cir. 2011) (a discrimination claimant who is waiting for a right-to-sue letter on new claims that are factually linked to an earlier suit should ask the district court to

stay the first case until the EEOC letter arrives); *see also Alvear-Velez v. Mukasey*, 540 F.3d 672, 678-80 & n.4 (7th Cir. 2008).

Nevertheless, the Postal Service's citation to *Estate of Barrett* demonstrates its awareness of this issue, such that it appears to the Court that the Postal Service intends to waive any res judicata defense it might otherwise have in the pending lawsuit before Judge Norgle were this Court to enter final judgment in favor of the Postal Service in this case while the lawsuit before Judge Norgle is still pending, which is what is likely to happen here. Were it not for the Postal Service's waiver of res judicata, the Court would be concerned by both sides' failure to notify this Court (and failure to notify Judge Norgle in the parallel proceeding, it appears) of the pending related case before a different district judge. At the very least, the factual and legal arguments in the two pending cases overlap to such a degree that there does not appear to be any merit to the Postal Service's position that it was *not* likely that the handling of both cases by the same judge "would result in a substantial saving of judicial time and effort." Local Rule 40.4(g)(2). Therefore, the Court will assume that the Postal Service's failure to move for consolidation was the result of oversight and not a conscious decision that such a motion was either unnecessary or undesirable.

## CONCLUSION

For the foregoing reasons, the Postal Service's motion for summary judgment, R. 156, is granted.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: September 30, 2015